UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VIRTEXCO CORPORATION,

      Plaintiff,

    v.

OLD DOMINION MECHANICAL, LLC
and WEST BEND INSURANCE COM-
PANY,

      Defendants.

Civil No. 2:25cv293

## ORDER

Pending before the Court are a Motion to Realign the Parties (the "Motion to Realign") (ECF No. 12) and a Memorandum in Support thereof (ECF No. 13) filed by Defendant West Bend Insurance Company ("West Bend"), as well as a Motion to Remand (the "Motion to Remand") (ECF No. 14) and a Memorandum in Support thereof (ECF No. 15) filed by Plaintiff Virtexco Corporation ("Virtexco"). For the reasons set forth below, the Motion to Realign (ECF No. 12) is **DENIED** and the Motion to Remand (ECF No. 14) is **GRANTED**.

## I.    BACKGROUND

### A.    Facts

This case arises from a commercial construction dispute involving renovations to three townhomes located in Richmond, Virginia. *See generally* Compl., ECF No. 1-1. Virtexco is a Virginia corporation with its principal place of business in Virginia.

1

*Id.* at 2.[1] Defendant Old Dominion Mechanical, LLC ("ODM") is a Virginia limited liability company with its principal place of business in Virginia. *Id.* West Bend is a Wisconsin corporation with its principal place of business in Wisconsin. *Id.* It is authorized to provide insurance in the Commonwealth of Virginia. *Id.*

On March 23, 2020, the Commonwealth of Virginia Department of General Services contracted Virtexco to perform renovation work on Morson Row, a set of three, three-story historic rowhouses in Richmond, Virginia. *Id.* at 3. On April 8, 2020, Virtexco subcontracted with ODM pursuant to which ODM agreed to provide heating, ventilation, and air conditioning ("HVAC") and plumbing services to the project. *Id.* As part of the subcontract, ODM provided Virtexco with a certificate of liability insurance for the project, naming West Bend as its insurer and Virtexco as an additional insured under the commercial general liability policy. *Id.* at 5.

According to the Complaint, the parties' contractual relationship deteriorated over time, and on January 31, 2023, Virtexco terminated ODM for alleged default, including failure to complete work in a timely manner and failure to pass required mechanical system testing. *Id.* at 5–6. Virtexco alleges that ODM's deficient work required the removal and replacement of the entire HVAC system, and resulted in damages exceeding $4 million. *Id.* at 6.

**B.    Procedural History**

On April 30, 2025, Virtexco filed a two-count complaint in the Circuit Court for the City of Norfolk, Virginia seeking damages in excess of $4 million arising from

---

[1] All citations refer to ECF-generated pagination.

ODM and West Bend's alleged breaches of contract. Notice of Removal, ECF No. 1; Compl. at 7–8, ECF No. 1-1. Specifically, in Count I, Virtexco alleges that the subcontract with ODM is valid and enforceable, that ODM materially breached the subcontract through delayed and deficient performance, and that those breaches caused Virtexco to incur damages of approximately $4,056,560.31. *Id.* at 7. In Count II, Virtexco alleges that it is an additional insured under an insurance policy issued by West Bend to ODM, that ODM's deficient work caused Virtexco damages, that those damages fall within the policy's coverage, and that West Bend's refusal to remit payment under the policy constitutes a breach of contract. *Id.* at 7–8. Count II also seeks $4,056,560.31 in damages. *Id.* at 8.

On May 22, 2025, West Bend removed the action to this Court. Notice of Removal, ECF No. 1. On May 29, 2025, West Bend filed the Motion to Realign. Mot., ECF No. 12; Mem. Supp., ECF No. 13.[2] Therein, West Bend seeks to realign ODM as a plaintiff in this case. Mot. to Realign. at 1, ECF No. 12. On June 12, 2025, Virtexco moved to remand the action to state court. Mot., ECF No. 14; Mem. Supp., ECF No. 15. Therein, Virtexco opposes the Motion to Realign and requests that the Court remand this action to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject-matter jurisdiction. Mem. Supp. at 1, ECF No. 15. That same day, ODM filed a response in opposition to the Motion to Realign. Resp. Opp'n, ECF No. 19. On June 18,

---

[2] On May 29, 2025, West Bend filed an identical Motion to the Realign Parties (ECF No. 9) and a Memorandum in Support thereof (ECF No. 10). Because the arguments raised in the May 30, 2025 filings are identical to those raised in the May 29, 2025 filings, the earlier-filed Motion to Realign the Parties (ECF No. 9) and Memorandum in Support thereof (ECF No. 10) are hereby **DENIED as moot**.

2025, West Bend filed its reply in support of the Motion to Realign and in opposition to the Motion to Remand. Reply, ECF No. 22. Virtexco did not file a reply and the time to do so has expired. Accordingly, the Motion to Realign and the Motion to Remand are both ripe for adjudication.[3]

## II.    LEGAL STANDARD

A defendant may remove a state court action to federal court only if the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing that removal is proper. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns," federal courts strictly construe removal jurisdiction. *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 144 (1921)). Any doubts regarding jurisdiction are resolved in favor of remand. *Id.* (citation omitted).

Federal courts are courts of limited jurisdiction and may only adjudicate cases authorized by the Constitution and by federal statute. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Relevant here, federal district courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. This is commonly referred to as diversity jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010).

---

[3] The Court has determined that a hearing on the motions is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Civ. R. 7(J). Therefore, ODM's Request for Hearing (ECF No. 20) is **DENIED**.

For the purposes of determining diversity jurisdiction, courts are not bound "by the parties' own determination of who are plaintiffs and who [are] defendants." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). Courts must look beyond the pleadings and arrange the parties according to their real interests in the dispute. *Id.* Accordingly, even in cases where there is no diversity of citizenship between the parties based on the initial alignment of the parties in state court, a defendant may still remove the case and seek realignment of the parties to reflect the parties' true interest and produce the requisite diversity. *Lott v. Scottsdale Inc. Co.*, 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011). If the motion to realign the parties is granted and the other requirements for diversity jurisdiction are met, then the case may proceed in federal court. *Id.* But if the motion is denied, then the case must be remanded to state court. *Id.*

## III.    ANALYSIS

West Bend concedes that, but for realigning the parties, this Court does not have subject matter jurisdiction because there is no complete diversity in the case in controversy as originally filed. Mem. Supp. at 2, ECF No. 13. Accordingly, the Court must first determine whether diversity jurisdiction should be created through realignment.

In determining whether to realign parties for the purpose of diversity jurisdiction, courts in the Fourth Circuit apply the "principal purpose" test. *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008). Under this framework, the Court must first identify the primary issue in controversy. *Id.* (citing *U.S. Fid. &*

*Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 132–33 (4th Cir. 1995)). Next, the Court must align the parties according to their respective positions on the primary issue. *Id.* If the proper alignment differs from that set forth in the pleadings, then the Court must determine whether complete diversity exists. *U.S. Fid. & Guar. Co.*, 48 F.3d at 133. It does not matter that "a diversity of interests exists on other issues" if those other issues are "ancillary or secondary . . . to the primary issue" being litigated. *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983); *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992).

For example, in *City of Indianapolis v. Chase National Bank*, Chase Bank filed suit in federal court seeking damages for unpaid interest on a security bond. 314 U.S. at 68. Chase Bank, a New York corporation, filed suit against Indianapolis Gas, Citizens Gas, and the City of Indianapolis, all Indiana citizens. *Id.* Complete diversity existed as originally filed. *Id.* However, the underlying facts showed that Indianapolis Gas had previously leased its mortgaged property to Citizens Gas, who, in turn, conveyed its property to the City of Indianapolis. *Id.* at 70. Pursuant to the lease agreement, the City of Indianapolis should have been responsible for making the interest payments. *Id.* However, the interest payments ceased because the City of Indianapolis refused to regard itself as bound by the lease. *Id.* at 70–71. Although originally named a defendant, Indianapolis Gas agreed with Chase Bank on the primary issue that the lease should be valid and binding, which would hold the City of Indianapolis liable for the unpaid interest payments. *Id.* at 71. Because Indianapolis Gas' interests

6

aligned with Chase Bank's, the district court realigned the parties and destroyed diversity jurisdiction. *Id.*

On the other hand, courts may refuse realignment when the parties have adverse interests relating to the primary issue at controversy. Indeed, even in instances when insurance coverage may be *an* issue in the litigation, courts should only realign when coverage is the "foremost issue" in the litigation. *Virginia Beach Racquet Club N. Assocs., L.P. v. Travelers Indem. Co. of Connecticut*, No. 2:11cv447, 2012 WL 32435, at \*2 (E.D. Va. Jan. 5, 2012); *U.S. Fid. & Guar. Co.*, 48 F.3d at 134. In doing so, courts sometimes consider whether, in trying the case on the merits, it "would first have to decide whether the insurers were under any obligation to defend and indemnify [the insured]." *U.S. Fid. & Guar. Co.*, 48 F.3d at 134.

In its Motion to Realign, West Bend argues that the primary issue in controversy is insurance coverage and indemnity. Mem. Supp. at 4, ECF No. 13. West Bend argues that, to the extent Virtexco has also brought suit against ODM for breach of contract, the breach of contact is merely a subset of what Virtexco is required to prove in Count II. *Id.* On the other hand, Virtexco and ODM contend that the principal purpose of the suit is to resolve whether ODM breached its contractual obligations through delayed and deficient performance, and, if so, to what extent Virtexco suffered damages. Resp. Opp'n at 3, ECF No. 19; Mem. Supp. at 5, ECF No. 15.

The Court agrees with Virtexco and ODM. The pleadings make clear that Virtexco's "principal purpose" for filing the present suit is to recover damages allegedly caused by ODM's conduct—specifically, ODM's alleged breach of contract for delayed

and deficient work. Compl. at 6–7, ECF No. 1-1. Count I of the Complaint squarely presents the question of whether ODM breached its contractual obligations, and, if so, whether that breach caused Virtexco to suffer an excess of $4 million in damages. *Id.* On that issue, Virtexco and ODM are plainly adverse.

To be sure, Count II makes clear that Virtexco's coverage under ODM's insurance policy "is part of this litigation; however, it not the foremost issue upon which this case focuses." *Virginia Beach Racquet Club N. Assocs., L.P.,* 2012 WL 32435, at *2. As West Bend acknowledges, Virtexco cannot prevail on its coverage claim unless it establishes that its damages were caused, in whole or in part, by ODM's negligent acts or omissions in connection with its work on the project. Reply at 5, ECF No. 22. But ODM has not conceded liability, negligence, or damages. Answer at 7–8, ECF No. 7. To resolve the action, then, a court of competent jurisdiction must determine the primary issue of whether ODM breached its subcontract and whether that breach caused $4,056,560.31 in damages.[4] Only then does the question turn to whether and to what extent West Bend is liable for coverage. Because ODM's interests are directly adverse to Virtexco's interests on the primary issue, ODM is properly aligned as a defendant.[5] Whether West Bend ultimately pays all or some of the damages

---

[4] The Court disagrees with West Bend's contention that a determination in favor of coverage would render any determination as to breach of contract by ODM moot. Reply at 6, ECF No. 22. It is unclear whether West Bend's coverage, if any, would fully remedy Virtexco's alleged harm if a court of competent jurisdiction were to award damages. Indeed, regardless of whether it is ODM or West Bend who ultimately pays for any such award, ODM's alleged liability remains the focal point of this lawsuit.

[5] This case is not analogous to *James River Ins. Co. v. Arlington Pebble Creek, LLC,* 118 F. Supp. 3d 1302 (N.D. Fla. 2015). There, James River, an insurance company, sought a declaratory judgment in federal court to relieve its duty to defend or

stemming from ODM's conduct is ancillary as pleaded. Accordingly, West Bend's Motion to Realign must fail and is **DENIED**.

Moreover, because the Motion to Realign must be denied, complete diversity does not exist. West Bend concedes that, absent realignment, this Court lacks subject-matter jurisdiction. Mem. Supp. at 2, ECF No. 13. Accordingly, the Motion to Remand must be **GRANTED**, as the Court lacks subject matter jurisdiction.[6]

## IV.    CONCLUSION

For the foregoing reasons, West Bend's Motion to Realign (ECF No. 12) is **DENIED** and Virtexco's Motion to Remand (ECF No. 14) is **GRANTED**. West Bend's first Motion to Realign the Parties (ECF No. 9) is **DENIED as moot**. The case is hereby remanded to the Circuit Court for the City of Norfolk. The Clerk is

---

indemnify the defendants. Notably, the underlying suit addressing the merits of the case was brought, and remained, in state court. *Id.* at 1304. Each count in the federal complaint concerned only insurance coverage. Here, by contrast, the Court is presented with a breach of contract claim asserted against both ODM and West Bend. The primary question in this case is whether ODM's conduct constituted a breach of contract or negligence that could support an award of damages as Virtexco seeks. The two counts, here, merely present two different, though potentially adjacent, theories of recovery.

[6] Virtexco also asks the Court to award costs and expenses for responding to the Motion to Realign. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Courts have discretion to determine whether to award costs or fees. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Case law favors neither awarding nor denying fees, and the inquiry turns on the reasonableness of removal. *Id.* Typically, courts may award fees under § 1447(c) only when the removing party lacked an objectively reasonable basis for seeking removal. *Id.* While the Court disagrees with West Bend's reasoning, it does not interpret the removal as objectively unreasonable. Accordingly, the Court declines to exercise its discretion to award costs and fees.

**DIRECTED** to close this action. The Clerk is further **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

      **IT IS SO ORDERED.**

_____/s/_____
Arenda L. Wright Allen
United States District Judge

February 17, 2026
Norfolk, Virginia